On behalf of Marta Santos, I would like to reserve two minutes, please. It's fine. The Due Process Clause protects individuals from arbitrary government action by requiring that an individual have the opportunity to have a hearing that occurs at a meaningful time and in a meaningful place. And on the undisputed facts in this record, that did not happen. And where the State court, contrary to the Supreme Court's well-established due process jurisprudence, explicitly said that it was not going to second-guess prison officials or their application of the regulations to Santos, it clearly abdicated its responsibility to ensure that Santos was afforded the requisite due process before the government made the decision to act against him. And on that basis, this Court should grant habeas — Santos's habeas petition outright. So I feel like Nettles leaves this case in a bit of a mess, because I think because there's — he's not in the shoe anymore, and you've had the Asker litigation. What's really at stake is the gang validation and its other consequences. And if he were bringing that part of what's left today, wouldn't it have to be a 1983 action? The issue that the Court's addressing is — is mootness. Now, this Court — Well, I don't think it's moot, but what I'm worried about is whether really it's still a habeas case. Well, Your Honor, I think Spencer v. Kemme answers that question. In order to be able to proceed in a habeas, you have to be in custody at the time you initiate. That's the only in-custody inquiry. After that, if there's changed circumstances, Spencer v. Kemme clearly states we're in mootness analysis at that point. And the issue is whether there is remedy that — relief that this Court can provide. Is there still a concrete injury? But when — when the remedy is vacating a conviction that's like habeas — it's a habeas remedy, you're asking, I think, for a remedy that now would be a 1983 remedy after Nettles. There's no doubt he could not, after Nettles, he would not have the ability to initiate this action as a habeas. But I think both Spencer v. Kemme and Friends of the Earth clearly set forth that once this Court — or, well, in this case, a court has actually specifically said he had a viable legal action and he was able to proceed. Now we're years down the road, and the issue is, is there still a remedy that this Court can provide? Friends of the Earth cited to Olmstead v. LC, which also, like just because an individual is transferred out of the custody of which they're complaining of, that doesn't make the — the case — the case can still proceed. The standing — So I guess I'm not disputing that there's Article — there's not an Article III mootness problem. But I'm wondering, is the remedy that I think is now kind of in play is, can he be gang-validated for purposes of things like extra monitoring, extra supervision, the possibility of other consequences of being a gang member? I think if he were bringing it today, it would be a 1983 suit. And I also think maybe he'd be better off with this as a 1983 suit because we wouldn't have edpedeference. So after Nettles, I'm wondering why we are still calling this a habeas case. Well, Your Honor, the — the State can't suddenly vitiate a valid legal action. Yes, but the question is — and this was involved in Nettles as well. It isn't — even if — it doesn't mean that it's not a valid legal action. It just means it's a different one. So in other words, why — ordinarily, the way you plead a case, what you call it, doesn't necessarily control the way it's treated for — it should be treated for what it is. And the question is, why at this rate, at point, don't we say, well, this is not a habeas, but it's a 1983, go back and litigate your 1983? What's the downside of that for you, first of all? And second of all, why couldn't we do that? Well, the downside of it at this point in terms of just simply sunk costs in this case and the amount of time, Santos has been wrestling with this since 2010. And he brought what this Court clarified was a valid habeas petition. The government has engaged — But he was still in the shoe then, and there wasn't a settlement saying that he couldn't automatically be put back. But, yes, that's correct. When he initiated this action, he had the right to do so. The government has now, through its voluntary actions, taken him out of the shoe for the moment. He could very easily, because of that validation, be sent right back to the shoe. Well, not just because of. Well, Your Honor, I think that the facts of this case show that that pretty much is the case, because — But the — well, the facts were before Asker, Asker's settlement. Your Honor, I don't — I don't think that — because that litigation has been ongoing. I think it's very clear that that doesn't impact what I'm talking about here. In fact, in that case, in that litigation, it shows exactly what I'm talking about here can easily reoccur, which is this case initiated when Santos was a victim of a battery. And then a week later, out of the clear blue sky, there comes a confidential informant saying, oh, by the way, there was some other secret assault that happened two minutes earlier, and it was gang-related. Now, if that were to happen today, with this gang validation in place, he's right back in the shoe. He's back in the shoe for 24 months to their — due to the step-down program. So this gang validation has — it's an express ticket right back to the shoe based on nothing that Santos does wrong. He simply has to be a victim of a battery. Okay. So what would be the harm for your client if we said from now on we're calling this a 1983 suit and you don't have to worry about AEDPA deference? Well, if we transformed it right now and we're able to proceed right now as opposed to starting all over again, then that would be — that would — there would not be an issue with that if we wanted to transform it. Because it's very clear there's still a remedy that this Court can provide. So this is not a case where there's not a concrete injury that can be addressed here. So if the Court wants to relabel it in 1983 and proceed on, that's not an issue. But I don't think it's necessary to do that under Spencer v. Kemme. I think that case made it very clear that the custody — all we're talking about when we're talking about custody and habeas jurisdiction is when the suit was brought, at the moment in time when the suit was brought. So he's cleared that hurdle here. So because there is still a remedy that this Court can provide, indeed, the remedy — in the initial decision, this Court identified two remedies that Santos was seeking, one of which was expungement of the gang validation from his record, and two was released from the shoot. The same remedy that Santos has been seeking from day one, and this Court identified that he was seeking, he's still seeking, and this Court can provide redress. So I don't think that the — just because the State has, for the moment, taken him out of the shoe, should be held against Santos and his valid due process claim. But could we, under Nettles, say we're granting habeas, ordering the State to expunge his gang validation, and still call this a habeas case after Nettles? Yes, Your Honor, because all Nettles dealt with was whether the individual had the standing at the time he initiated. He has to be in custody. That's what Nettles talked about. He was in custody, just like Spencer v. Kemme. Therefore, the case can proceed as a habeas. It doesn't — Well, that's not what Nettles says. I mean, Nettles is about — That's what Spencer v. Kemme says. Right. But put that aside. But the remedy that they were seeking there was invalidating a conviction. That's always a thing that you can do in habeas. But Nettles tells us there are only certain things you can do in habeas now, and the other things have to be done in 1983. Well, he's — Santos is addressing the custody component. Yes, for the moment, they've taken him out. But the ticket that was punched is still there. The collateral consequences are still there. It's still a custody case. Unlike in Spencer v. Kemme, where the individual was no longer in custody, that's not the situation here. He's still in custody. His ticket has been punched. But so are all the 1983 claimants who want different conditions. There's no doubt that he could and would today have to bring this as a 1983, but that's a different question. He has initiated a valid habeas case under Spencer v. Kemme. There are collateral consequences. There is a remedy. But then where is the clearly established law that tells us the Supreme — the State court was wrong? The clearly — well, there's two issues here. In terms of, is the Court talking about the clearly established due process where the individual has to have sufficient notice to be able to marshal the facts against them and be heard by the decisionmaker prior to the decisionmaker making the decision? For gang validation. Correct. That's fundamental due process. That's Wilkinson v. Austin, which builds on the — Matthews v. Eldridge. It builds on — But how do we know that the State court had to treat gang validation as a sufficient liberty interest? Well, the — I think the — the — well, first, the State has already conceded that it is a sufficient liberty interest in terms of — Well, when he was in the SHU. When he was in the SHU. And that's the — that's the issue here. He — the custody component has been satisfied. This is stemming from the custody component. So the issue — that is — the custody issue that has been at the heart of this case continues to be at the heart of this case. Just because the State has taken him out of custody for the moment, they can very easily put him right back there just because of the gang validation. So that's — that's the substantial liberty interest. That's the protected liberty interest. But the main — your — my understanding is that your main complaint about the notice was not receiving a adequate summary of a certain document. There's two — two — there's several issues. There's the issue — there's several material disputes of fact, which, at the very least, there's an abuse of discretion for not ordering an evidentiary hearing to address, because if Santos was not provided the CDC 1030 — That's the question. Well, that's — that's one of the questions. I don't think the court — No, but it's only material if it would matter. So the question is, why would it matter? Well, certainly it matters in terms of — if you're being accused of being a block hero of a specific cell block at a specific time, that — that being afforded the opportunity to defend against that allegation is categorically different than being told you have an old necklace and an old address book and what seems to be somewhat racist musings of a gang investigator that says all Mexican nationals are involved with the Mexican mafia. That's not the same opportunity to defend. And — but before we even get to that, there's the issue that his gang validation was on January 27, 2011, and at that time, the State acknowledges that he hadn't been provided all of the — the sufficient information with respect to one of the source items. Based on that alone, we don't need to get into the evidentiary dispute, and this Court can grant the habeas outright based on the State's concession that he did not have sufficient information at the time the government acted to validate him as a gang associate. Okay. Your time is up. Thank you very much. May it please the Court. Andrew Woodrow on behalf of the appellee. This Court did previously determine that Mr. Santos's claims invoked habeas corpus jurisdiction because at that time he sought immediate release from the SHU. Well, suppose it didn't. Why can't we just say, all right, this is now a 1983 case? Well, the habeas jurisdiction is lacking. Well, that's not my question. My question is, all right, fine. Why can't we now say it's a 1983 case? Well, I think 1983, and I believe the Nettles case referred to it, there's certain pleading requirements, there are fouling fees, there are certain mechanisms that need to go forward. He might need to amend or something or file an extra fee. That's correct. Because at this point, he's basically challenging a prison gang validation notation in his prison file, and that does not implicate the factor duration of his confinement. Success on that claim would not result in immediate release. But what are you suggesting happens then? Do we dismiss the case? We reverse and he's out of court or what? I believe this case is moot. Why is it moot? Because there's no actual controversy because he's been released from the SHU. But he still has the gang validation that still has some automatic consequences like more monitoring and more supervision, right? And the possibility of being returned to the SHU. Well, the collateral consequence that was identified was the fact that he might be unjustly attacked in the yard, or attacked in the yard and unjustly found guilty of a prison disciplinary. I thought they also talked about how he's going to be subjected to more monitoring for being a gang member. And isn't that true? Under the regulations, he went to a different type of custody, closed custody, but that was for one year. He was released from the SHU. I thought under the regulations, gang members had to always be monitored more. Is that not true? I mean, for classification purposes, prisons use all information. The more information, the better in classifying someone. But a prison gang validation itself does not affect their classification score. It's not going to affect the facility level that they're in necessarily under the regulations. There's no regulation that says gang validated people need to be monitored more? Well, it is certainly something that's taken into account in a classification decision, but as far as classification score and facility level, I do not believe under the regulations that it has an effect. I mean, Mr. Santos is now housed in the general population in a Level III facility. It may be in custody. What about the representation that if some X thing happened, he could be returned to the SHU because of his gang classification? Well, that collateral consequence is based on, number one, it's based on speculation. And number two, it's based on his own misbehavior. He would need to be found guilty of a prison disciplinary action with a nexus to security. So are your claims that this is Article III moot, not just not a habeas? I believe it's Article III moot as well because he doesn't have a liberty interest anymore. I mean, placement in a maximum security housing unit may constitute an atypical and significant hardship, giving rise to a liberty interest. And here is liberty interest in this case derived. It may or it does? I'm sorry. It may or it does? I mean, you said that in a way that you don't know. Well, it does. It does. It can. It does. Depending on the type of maximum security housing. And what if he was being subject to extra — suppose that we establish that he was subject to extra monitoring, either as a practical matter or as a matter of regulation? Well, I do not believe that would rise to the level of a liberty interest because he's not in maximum security housing. Really? He's in medium custody. He's in the general population. And that's not a liberty interest that comes from his gang validation? I don't believe that would be an atypical — Okay. — significant or atypical hardship that would rise to a liberty interest. I do not believe that placement in general population does not constitute an atypical or significant hardship. Oh, I think I found it. California Code of Regulations, Title 15, Section 3023, doesn't it say that once gang members are validated, CDCR staff shall track their movement, monitor their conduct, and take — I don't even know how to say this word — interdiction action as necessary? Sure. I mean, it is a factor that they would consider. But so those are things that happen. Well, no. I'm not sure why you're talking about classification. Aren't those — aren't those the consequences that automatically follow from gang validation that other people don't face? That is true, yes. Okay. So then this case is not moot. There's an automatic consequence for the gang validation, right? How do we get — why does this case stand moot in Article III realm because of no consequences when you just admitted there are consequences? Well, I mean, I would argue that it's moot because there are no — Because why? — collateral consequences to overcome mootness. They haven't been identified that the collateral consequence is the — But this isn't like Spencer. I mean, here we have actual, concrete collateral consequences, not speculative collateral consequences. I believe it is like Spencer, and that there are no collateral consequences. We just read you that there are. It's based on speculation and based on misbehavior. What's the speculation? The regulation says that he's supposed to be monitored especially because of his gang validation. Is it the speculation is they might not do what they said they're going to do? Well, it's speculation on the fact that he would be placed back into the security housing unit. Okay, fine. So we give you that. But that doesn't matter because there's still a consequence that follows from the gang validation that is automatic and means there's still a controversy about whether he's gang validated or not. Okay. I understand. But it still would not fit under habeas corpus because we're still talking about a prison gang validation decision, and that does not implicate the fact of duration of confinement. And it doesn't result in a speedier release from segregated confinement because he's in the general population. Do you want to discuss the merits at all? Sure. The district court did properly determine that the State court decisions were not an unreasonable application of clearly established Federal law. And under Hewitt and Austin, which directly addressed the process due, it made us entitled to some notice that he's being considered for a transfer to highly restrictive housing and an opportunity to present his views. And there is ample evidence in the record to support the fact that Mr. Santos received all disclosures. He certainly received notice or a notice of the factual basis. The evidence includes the original Crono listing, the reasons for the gang validation, the classification Crono, the appeal decision. It just — it cannot be said that no fair-minded jurist could agree with the correctness of the State court decisions. And under AEDPA and the deferential standard, he certainly received notice. And he also received an opportunity to be heard as well. He received an opportunity to submit two written rebuttals and two interviews as well. As for the evidence itself, I would say there is no Supreme Court authority applying the sum evidence test to prison gang validations. And Superintendent v. Hill involved disciplinary action involving a loss of credits in that context. But in this context, this is a prison gang validation, and a test applied in one context can't be applied to a different context. Ginsburg. I'm sorry? A test applied in one context? What does that mean? Miller. A test applied in one context cannot be applied in a different context. That's a rule of law? I don't understand that rule. Are you talking about AEDPA? Is that what you're talking about? Yes, Your Honor. Oh, well, you didn't say that. Kerry v. Misladen. Yeah. All right. I'm sorry. But even if the test is applied, the district court decision — the State court decisions finding sum evidence are not contrary to clearly established Federal law. There's the address book, there's the Warshield necklace, the informant identifying him as a blockero. And under Brews v. Yilst, in which this Court applied the sum evidence test, any of those items can constitute sum evidence to support the decision. Thank you. You're done. Thank you very much. Thank you, Your Honor. With respect to mootness, the burden is on the government to prove that there is absolute — with absolute clarity that there's not a reasonable chance that the situation would reoccur. The government — the State here is shifting the burden to the — to Santos. It's — as the Court has established, clearly there are collateral consequences here. And the big one that we're not discussing, because it's not a basis for bringing a habeas, but obviously the — the decision effectively transforms his sentence from life with parole to life without parole. Oh, why is that? Well, I think common sense would tell us that a parole board is not going to be releasing an individual who is considered an unrepentant, active gang associate of the Mexican Mafia. I think that's fairly — it seems fairly common sense that that is a — sort of the elephant in the room here, in addition to all the other collateral consequences we're talking about. I have no way — I know this has been litigated in various contexts. To simply ask for a reconsideration of the gang validation? That — there's not — I mean, he went through his administrative remedies. And so now — Well, I understand that, but isn't there some recognition that you can't do that? You might have been a gang member once, but aren't anymore? His option is — is to debrief, basically. And you can't debrief if you're not a gang member. So he's in a catch-22 where he has consistently contended that he is not. And I do not believe that there is some evidence to support that with the record as it is. The government — the State is very happy to take the representations that it made and the State court adopted without making any sort of factual findings or affording any full and fair hearing to resolve the factual disputes. There's a factual dispute with respect to every single item relied on, that the address book that was seized did not have the name in it, that the necklace, this eternal warrior shield is an undefined term, that nobody has — has said what it is, does it actually mean something, and is this that. And the confidential informant, there's been absolutely no assessment whether that individual had firsthand knowledge of the accusations that they're making. All of those are material factual disputes, aside from the very big one, which is he contends he was never provided notice that he was being alleged of being a blockero in a specific unit at a specific time two years earlier, which I would contend the State doesn't even take seriously, because if they really believed he was a blockero, they wouldn't have validated him as a gang associate as opposed to a gang member, and they wouldn't have waited two years before taking action. So there's some serious credibility issues. There was no evidentiary hearing, no chance for Santos to put forth his version of the facts in the record. And based on that, if nothing else, the district court abused its discretion under Taylor v. Maddox and Hurls v. Ryan in not affording him an evidentiary hearing. But I believe that this Court can decide this habeas outright on the basis that the State acknowledges he was not given the sufficient information with respect to one of the source items the government was relying on to act against him. Okay. Thank you very much. The case of Santos v. Holland is submitted. We will go to Anderson v. Wilkening.
judges: Berzon, Friedland, Cardone